UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

**FILED**

JUN - 9 2006

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

DECISION POINT TECHNOLOGIES, INC., )
)
Plaintiff, )
)
vs. )
)
PERCY JOHNSON, )
)
Serve: )
3916 Rock Trail )
Plano, TX 75074 )
)
)
Defendant. )

**4  06CV0 0896A G F**

Case No.

**JURY TRIAL DEMANDED**

## COMPLAINT

COMES NOW Plaintiff Decision Point Technologies, Inc., and for its causes of action

against Defendant Percy Johnson, states as follows:

### JURISDICTION AND VENUE

1.     Plaintiff Decision Point Technologies, Inc. (hereinafter "Plaintiff") is a Missouri

corporation with its principal place of business in St. Louis County, Missouri.

2.     Defendant Percy Johnson (hereinafter "Defendant") is a citizen and resident of the

State of Texas.

3.     This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332

in that Plaintiff is a citizen of the State of Missouri, Defendant is a citizen of the State of Texas,

and the amount in controversy in this matter exceeds $75,000, exclusive of interest and costs.

4.     The Court also has personal jurisdiction over Defendant in that Defendant has

transacted business within the State of Missouri, entered into one or more contracts within

Missouri, and committed one or more tortious acts giving rise to this cause of action within the State of Missouri. RSMo. § 506.500. Defendant was employed by Plaintiff from October 2005 through May 2006. As an employee of Plaintiff, Defendant traveled to Plaintiff's Missouri headquarters (in St. Louis County) at least eight (8) to ten (10) times during his eight-month tenure with Plaintiff and conducted business on behalf of Plaintiff and himself in Missouri. Defendant also regularly telephoned and e-mailed into St. Louis County, Missouri as a requirement of his job and in furtherance of his unlawful conduct. Further, Defendant's paycheck was issued from St. Louis County, Missouri. Finally, as a alleged herein, Defendant's unlawful conduct was directed against and damaged Plaintiff, a Missouri corporation based in St. Louis County.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and Rule 2.07(A)(1), (B)(2) of the Local Rules of the Eastern District of Missouri, as a substantial part of the events, omissions and acts giving rise to the claims herein occurred in St. Louis County in the State of Missouri.

## PARTIES AND FACTUAL BACKGROUND

6.      Plaintiff is a leading information technology ("IT") service management firm that provides a broad range of technology solutions to help its clients improve their business performance. Plaintiff's core services include project management, enterprise content management, IT systems consulting and IT staffing solutions.

7.      Defendant began his employment with Plaintiff on October 3, 2005. Defendant was hired as the Director – ECM Practice of Plaintiff. The Electronic Content Management Practice ("ECM") provides services to clients in the mortgage and insurance industries (among other industries) related to managing the imaging and scanning of documents, the workflow/use

of such imaged documents company-wide, and other related services.

8.      Defendant understood when he was hired that he would service clients of Plaintiff and establish new clients for Plaintiff.

9.      As an employee of Plaintiff, Defendant earned approximately $10,000.00 per month, plus benefits, during the first five months of his employment. During the last three months of his employment, Defendant's salary was increased to $15,000 per month, plus benefits. Defendant had requested the increase in salary.

10.     When Defendant was interviewed and hired, he agreed and represented that, as an employee of Plaintiff, he would be available to service both existing and new clients of Plaintiff at the direction of Plaintiff.

11.     Defendant also represented that, on behalf of Plaintiff, he would be able to successfully solicit a client, Mortgage Resource Network ("MRN"), an entity needing the services offered by Plaintiff. Defendant was, in fact, successful in soliciting the business of MRN.

12.     In January 2006, MRN was purchased by, or merged into, Clayton Holdings, Inc. Defendant was successful in maintaining and bringing in business through Clayton Holdings, Inc. (MRN, Clayton Holdings, Inc. and their affiliated entities are hereinafter collectively referred to as "Clayton Holdings").

13.     During his employment with Plaintiff, Defendant did not make himself available to clients of Plaintiff as promised and as directed by Plaintiff.

14.     Furthermore, without Plaintiff's knowledge or consent, rather than service Plaintiff's clients as promised and directed, Defendant instead diverted Plaintiff's business to himself and entered into his own contractual arrangement(s) with Clayton Holdings to the

-3-

exclusion of Plaintiff and to the sole financial benefit of Defendant, for services offered by and available from Plaintiff.

15.     Defendant further charged to Plaintiff's company credit card the cost of travel, lodging, meals and similar business expenses in furtherance of his self-dealing with Clayton Holdings.

16.     Plaintiff was directly paid at least $100,000.00 by Clayton Holdings for services he performed for Clayton Holdings while employed by Plaintiff.

17.     Defendant voluntarily resigned from his employment with Plaintiff on May 26, 2006, after Plaintiff had expressed concern to Defendant about several issues, including the fact that Defendant had not been successful in bringing in clients for Defendant's ECM services, other than Clayton Holdings.

## COUNT I – BREACH OF THE DUTY OF LOYALTY

18.     The allegations stated in Paragraphs 1 through 17 of this Complaint are incorporated by reference herein with the same force and effect as if set forth fully below.

19.     While employed by Plaintiff, Defendant owed the company a duty of loyalty not to act contrary to the Company's interests while employed by the Company. During his employment, defendant also had a duty of loyalty not to actually compete with the Company and not to divert the business of customers and potential customers of the company to himself or a competing business.

20.     Defendant flagrantly breached his duty of loyalty by, at the very least, soliciting Clayton Holdings by diverting their business to himself for his own personal gain and benefit for services offered by, and available from, Plaintiff.

21.     Defendant received payments totaling over $100,000.00 from company client, Clayton Holdings, during his employment with Plaintiff. Defendant invoiced Clayton Holdings for his own personal services to Clayton Holdings while simultaneously invoicing Clayton Holdings for services on behalf of Plaintiff.

22.     Defendant further breached his duty of loyalty by referring other potential business to one or more third party competitors out of his own self interests. On information and belief, Defendant received a benefit in exchange for referring such business away from Plaintiff and to a competitor.

23.     As a direct result, Plaintiff has been damaged with respect to the actual lost business and revenues caused by Defendant's tortious conduct.

24.     Defendant's breaches of his duty of loyalty were outrageous because of Defendant's evil motive or his reckless indifference to the rights of others, namely Plaintiff, entitling Plaintiff to punitive damages.

WHEREFORE, Plaintiff respectfully prays that the Court enter judgment in an amount that is fair and reasonable in excess of $100,000.00, for compensatory and punitive damages, and interest, and further award Plaintiff all attorneys' fees, expenses, and court costs incurred in this matter, and for further relief as this Court deems is just and proper.

## COUNT II – FRAUD

25.     The allegations stated in Paragraphs 1 through 24 of this Complaint are incorporated by reference herein with the same force and effect as if set forth fully below.

26.     During the interview process and the time he was hired as an employee of Plaintiff, Defendant made specific and affirmative representations that he would be available to perform services clients of Plaintiff, as directed by Plaintiff.

27.     Defendant further made specific and affirmative representations that Defendant was fully engaged in the development of the Enterprise Content Management (ECM) Practice for Plaintiff, indicated on numerous occasions that he understood the responsibilities associated with his position as Director of the ECM Practice and was working diligently to achieve the goals as directed by Plaintiff.

28.     By accepting employment with Plaintiff as Director of the ECM Practice, Defendant further led Plaintiff to believe Defendant would not work in competition with Plaintiff.

29.     The foregoing representations were material in that, as a service-oriented business, Plaintiff needs employees committed to serving its clients in the interests of the company.  The representations were further material in that they induced Plaintiff to hire and continue to employ Defendant as Director of its ECM Practice.

30.     Defendant made the misrepresentations referenced herein with the intention that Plaintiff would rely on those statements.

31.     Plaintiff reasonably relied on Defendant to work in the best interests of the company and, further, to be available to service clients of Plaintiff as directed by Plaintiff, and, in so relying, Plaintiff used a degree of care that was reasonable for the situation.

32.     Plaintiff further relied on Defendant not to defraud Plaintiff by engaging in self-dealing and soliciting Clayton Holdings or any other clients or potential clients for himself for services that could have been provided by Plaintiff.

33.     Defendant's false statements and misrepresentations, both express and implied, as set forth herein, were false.

-6-

34.    Defendant knew that, in fact, the statements and representations alleged herein were false when he made them. Indeed, Defendant began receiving direct payments from Clayton Holdings shortly after the start of his employment with Plaintiff and continued receiving those payments through the date of his resignation in May 2006.

35.    Defendant continuously made false statements and engaged in deceptive activities concerning his activities on behalf of Plaintiff, including, for example, leading Plaintiff to believe that he would be working for Clayton Holdings on behalf of the company when, in fact, he was working for Clayton Holdings on behalf of himself.

36.    As a direct result of Plaintiff's reliance on Defendant's misrepresentations, Plaintiff has suffered damages.

37.    Plaintiff has suffered damages based on the business it lost as a result of Defendant's failure to service clients as directed by Plaintiff, when Defendant was instead servicing Clayton Holdings for his own account.

38.    Plaintiff has also suffered damages exceeding $100,000, which is the minimum amount in total payments Clayton Holdings made to Defendant for services provided by Defendant that could have and should have been performed by Plaintiff.

39.    In committing this fraudulent conduct, Defendant acted out of his own financial self-interest. Defendant's fraudulent conduct was outrageous because of Defendant's evil motive or his reckless indifference to the rights of others, namely Plaintiff, entitling Plaintiff to punitive damages.

WHEREFORE, Plaintiff respectfully prays that the Court enter judgment in an amount that is fair and reasonable in excess of $100,000.00, for compensatory and punitive damages, and interest, and further award Plaintiff all attorneys' fees, expenses, and court costs incurred in this matter, and for further relief as this Court deems is just and proper.

## COUNT III – MISSOURI COMPUTER TAMPERING ACT

40.    The allegations stated in Paragraphs 1 through 38 of this Complaint are incorporated by reference herein with the same force and effect as if set forth fully below.

41.    Plaintiff's computers, including the laptop computer provided for Defendant's use as an employee of Plaintiff, constitute computer equipment under the Missouri Computer Tampering Act, RSMo. § 569.097.

42.    Plaintiff is and was at all times the owner of the laptop used by Defendant as an employee of Plaintiff.

43.    Defendant knew, and knows, that the laptop computer was, and is, the property of Plaintiff.

44.    Plaintiff has demanded that Defendant return the laptop computer, but Defendant has failed and refused to do so.

45.    Defendant has taken Plaintiff's laptop computer without its authorization or consent. Plaintiff has reason to believe Defendant may have, or will, tamper with the data contained on the laptop computer in further violation of Missouri criminal and civil statutes.

46.    As a result of Defendant's violations of RSMo. §§ 569.095 to 569.099, Plaintiff has been damaged. Pursuant to RSMo. § 537.525, Plaintiff is entitled to recover such damages from Defendant, as well as all attorneys' fees and costs expended pursuing this litigation and expenses incurred analyzing the laptop computer if and when it is returned.

-8-

47.     In violating the Missouri Computer Tampering Act, Defendant's actions were (and are) outrageous because of Defendant's evil motive or reckless indifference to the rights of others, entitling Plaintiff to punitive damages.

WHEREFORE, Plaintiff respectfully prays that the Court enter judgment in an amount that is fair and reasonable in excess of $100,000.00, for compensatory and punitive damages, and interest, and further award Plaintiff all attorneys' fees, expenses, and court costs incurred in this matter, all expenses incurred analyzing the laptop computer if and when it is returned to Plaintiff, and for further relief as this Court deems is just and proper.

## COUNT IV – CONVERSION

48.     The allegations stated in Paragraphs 1 through 46 of this Complaint are incorporated by reference herein with the same force and effect as if set forth fully below.

49.     The company laptop provided to Defendant for his use is the property of Plaintiff.

50.     Defendant has intentionally denied Plaintiff the possession and use of the laptop computer and has maintained possession of the laptop.

51.     Defendant knew, and knows, that the laptop computer is the property of Plaintiff.

52.     Plaintiff has demanded that Defendant return the laptop computer, but Defendant as failed and refused to do so.

53.     Defendant has taken Plaintiff's laptop computer without its authorization or consent. Plaintiff has reason to believe Defendant may have, or will, tamper with the data contained on the laptop computer in further violation of Missouri criminal and civil statutes.

54.     Defendant's actions constitute conversion under state law.

55.     Defendant's actions were and are outrageous because of Defendant's evil motive or reckless indifference to the rights of others, entitling Plaintiff to punitive damages.

WHEREFORE, Plaintiff respectfully prays that the Court enter judgment in an amount that is fair and reasonable in excess of $100,000.00, for compensatory and punitive damages, and further award Plaintiff all attorneys' fees, expenses, and court costs incurred in this matter, all expenses incurred analyzing the laptop computer if and when it is returned to Plaintiff, and for further relief as this Court deems is just and proper.

Respectfully submitted,

ARMSTRONG TEASDALE LLP

BY: _____
William M. Corrigan, Jr., #2879
Michael B. Kass, #94212
One Metropolitan Square, Suite 2600
St. Louis, Missouri 63102-2740
(314) 621-5070
(314) 621-5065 (facsimile)
wcorrigan@armstrongteasdale.com
mkass@armstrongteasdale.com

ATTORNEYS FOR PLAINTIFF