UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DECISION POINT TECHNOLOGIES, INC. ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | Case No. 4:06CV896SNL |
| PERCY JOHNSON, ) ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's motion to dismiss for improper venue, or in the alternative, to transfer venue (to the Northern District of Texas, Dallas Division)(#7), filed July 7, 2006. Responsive pleadings have now all been filed and the matter is ripe for disposition.

This lawsuit concerns the failed business relationship of the two principals of plaintiff, Scott Schlotz and John Adam, and defendant. Decision Point Technologies (hereinafter referred to as DPT) is a Missouri corporation that was incorporated on March 22, 2004.[1] It is headquartered in Chesterfield, Missouri. DPT is an information technology service management firm that provides a broad range of technology solutions to assist its clients in improving their business performance. Messrs. Schlotz, Adam, and defendant all had prior experience in this field and their paths had crossed while providing similar services[2] to common clients.

---

[1]Although Mr. Schlotz' affidavit (Plaintiff's Response, Document #10, Exhibit 1) states that DPT was incorporated in March 2004, he also states that he was working for DPT as of the fall of 2003.

[2]One of these services which appears to be significant to the litigation is "electronic content management (ECM)"; a service whereby an ECM provider assists clients in managing the imaging and scanning of documents, the workflow/use of such documents, and other related

It is hotly disputed as to when discussions ensued between plaintiff and defendant as to defendant's employment with plaintiff. It is also hotly disputed as to the exact nature of defendant's employment with plaintiff. However, it appears from documents submitted by defendant that defendant had worked for a number of years for Imagine Solutions (IS), an ECM system integration company focused in the document management industry. He performed services for IS from Texas (defendant's place of residence). In 2005, defendant left IS to form an ECM software and integration company focused in the mortgage industry known as MRN Technologies. MRN Technologies was based in Dallas, Texas.

As a result of a series of visits and telephone conversations, between St. Louis and Plano, Texas (defendant's home), plaintiff sent defendant an employment proposal letter, dated September 29, 2005. Document #12, Defendant's Reply and Supplemental Affidavit, Exhibit A. Defendant rejected this employment proposal in a letter dated October 11, 2005. Document #12, Defendant's Reply and Supplemental Affidavit, Exhibit B. Although no written employment contract was ever consummated, it appears that some type of employment/business relationship was established between plaintiff and defendant.

Defendant distributed business cards which designated him as the "Managing Partner-ECM" for DPT and gave the Chesterfield, Missouri address. Document #12, Defendant's Reply and Supplemental Affidavit, Exhibit C. However, it appears undisputed that defendant worked out of an office in Dallas, Texas. It also appears that plaintiff acknowledged the existence of a "Dallas office" for DPT by offering employment to a Mr. Bill Lowry as "Senior Sales Executive" who resided in Dallas and would "be based in our Dallas office." Document #12, Defendant's Reply and Supplemental Affidavit, Exhibit D.

---

services.

Defendant terminated his business relationship with plaintiff on or about May 26, 2006. Upon severing his business relationship, and after one or more requests from DPT, defendant returned a DPT-issued computer to the principals of DPT.

DPT believes that defendant, contrary to the parameters of their business relationship and based upon certain alleged (mis)representations by the defendant, and while "employed"[3] with DPT, "diverted DPT's business to himself and entered into contractual arrangements for his own personal benefit with two of DPT's clients, Mortgage Resource Networks (`MRN') and its new owner Clayton Holdings, for services offered by and available from DPT." Plaintiff's Response (#10), pg. 3. Accordingly, DPT has filed this lawsuit against defendant for breach of duty of loyalty, fraud, violation of the Missouri computer tampering statutes, and conversion.

**<u>Improper Venue</u>**

In a diversity case (such as this one), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. §1391(a)(2). It is not unusual for venue to be proper in more than one district; however, a court's inquiry is not to ask which district among two or more potential forums is the best venue. <u>Pecoraro v. Sky Ranch for Boys, Inc.</u>, 340 F.3d.558, 562 (8th Cir. 2003); <u>Setco Enters., Corp. v. Robbins</u>, 19 F.3d. 1278, 1281 (8th Cir. 1994). Rather, a court should ask whether the forum selected by the plaintiff had a substantial connection to the claim, without regard to whether other forums had greater contacts. <u>Pecoraro</u>, at 562; <u>Setco Enters.</u>, at 1281. In making this determination, a court should focus on the relevant activities of the defendant, not of the plaintiff. <u>Woodke v. Dahm</u>, 70 F.3d. 983, 985 (8th Cir. 1995).

---

[3]As stated earlier, the parties totally disagree as to the nature of the business relationship in that plaintiff asserts that defendant was nothing more than an "employee" and defendant asserts that he was an "equity partner" in DPT.

Upon review of the pleadings, including the affidavits, and in light of the standard of review under §1391(a)(2), the Court determines that both Missouri and Texas have a substantial connection to the claims asserted by the plaintiff; therefore, the Court denies the defendant's motion to dismiss insofar as defendant asserts that venue is improper.

The primary focus of the plaintiff's complaint is the alleged misdirection of MRN business away from plaintiff to defendant and the alleged misrepresentations by defendant regarding his business relationship with MRN while "employed" by plaintiff.[4] A great deal of the plaintiff's response pleading and Scholtz affidavit is spent on arguing the merits of whether or not defendant was an "employee" of plaintiff; an issue not germane to the question of proper venue. Plaintiff also exerts considerable energy relating events irrelevant to the claims asserted such as defendant's visits to Missouri predating any employment situation with plaintiff. It also argues that documents and witnesses evidencing its claims are located in Missouri; however, this is not material to a §1391 review. However, plaintiff does assert that on at least five (5) occasions in which defendant visited St. Louis, defendant represented to the plaintiff that all of his business transactions were for the benefit of plaintiff. Plaintiff relates one particular visit in February 2006 in which defendant specifically related to Scholtz that defendant was not performing any services for MRN and/or Clayton Holdings nor was receiving any payments from MRN and/or Clayton Holdings for his own personal benefit. Even if Texas has greater contacts and might be found to be a "better" venue, this would not be fatal to a showing of proper venue in Missouri since the only issue is whether Missouri has a substantial connection to the claims asserted by the plaintiff.

---

[4]The Court realizes that plaintiff also has a claim regarding a computer owned by plaintiff and used by defendant; however, this claim is secondary to the claims regarding the diversion of business.

The Court finds the relevant allegations sufficient to demonstrate that Missouri has a substantial connection to the claims asserted.

## Transfer Venue

Defendant moves in the alternative to transfer this cause of action to Texas. Defendant seeks transfer pursuant to 28 U.S.C. §1404(a). Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

In making a §1404(a) analysis, a plaintiff's choice of proper forum is given great weight and should not be disturbed unless the movant makes a clear showing that the balance of interest weighs in favor of the movant. Anheuser-Busch v. All Sports Arena Amusement, 244 F.Supp.2d. 1015, 1022 (E.D.Mo. 2002); Graff v. Qwest Communications Corp., 33 F.Supp. 2d. 1117, 1120-21 (D.Minn. 1999) *citing* Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947); Houk v. Kimberly-Clark Corp., 613 F.Supp. 923 (W.D.Mo. 1985). Merely shifting the burden of inconvenience and cost is not enough to grant a transfer. Medicine Shoppe Int'l v. Tambellini, 191 F.Supp. 2d. 1065, 1069 (E.D.Mo. 2002) *citing* Terra International, Inc. v. Mississippi Chemical Corp., 119 F.3d. 688, 696-97 (8th Cir. 1997); Houk, at 927-28; *see also*, Van Dusen v. Barrack, 376 U.S. 612, 646 (1964). The interests to be considered include the convenience of the parties and witnesses, the availability of judicial process to compel attendance of hostile witnesses, the governing law, relative ease of access to sources of proof, possibility of delay and prejudice if a transfer is granted, and practical considerations of cost and efficiency. Terra Int'l, at 696; Biometics, L.L.C. v. New Womyn, Inc., 112 F.Supp.2d. 869, 875 n.4 (E.D.Mo. 2000); General Committee of

Adjustment v. Burlington Northern Railroad, 895 F.Supp. 249, 252 (E.D.Mo. 1995); New Dawn Natural Foods v. Natural Nectar Corp., 670 F.Supp. 869, 873 (E.D.Mo. 1987); Midwest Mechanical Contractors, Inc. v. Tampa Constructors, 659 F.Supp. 526, 532 (W.D.Mo. 1987); Houk, at 927; *see also*, May Department Stores v. Wilansky, 900 F.Supp. 1154, 1165 (E.D.Mo. 1995). However, a district court is not limited to evaluating a transfer motion based upon these enumerated factors alone. Such an evaluation requires a case-by-case evaluation of the particular circumstances involved, as well as consideration of all relevant factors. Terra Int'l., at 691; Graff, at 1121.

Although a change in venue is well within the trial court's discretion, it should not be freely granted. In Re Nine Mile, Ltd., 692 F.2d 56, 61 (8th Cir. 1982); Anheuser-Busch v. All Sports Arena Amusement, at 1022. After weighing the relevant factors and considering the particular circumstances present in the case, unless the balance is strongly in favor of defendant, the plaintiff's choice of forum should be left undisturbed. Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947); Medicine Shoppe v. Tambellini, at 1069; May Dept. Stores v. Wilansky, at 1165; New Dawn, 670 F.Supp. at 874; St. Louis Federal Savings and Loan v. Silverado Banking, 626 F.Supp. 379, 383 (E.D.Mo. 1986). To prevail on his motion to transfer, defendant must show that his inconvenience substantially outweighs the inconvenience that plaintiff would suffer if venue were transferred. Nelson v. Soo Line Railroad Co., 58 F.Supp.2d. 1023, 1026 (D.Minn. 1999); Imation Corp. v. Sterling Diagnostic Imaging, Inc., 47 U.S.P.Q. 1745, 1747 (D.Minn. 1998).

Upon consideration, the Court finds the balance of factors taken into account under §1404(a) favors granting defendant's motion to transfer. Firstly, as to the convenience of the

parties[5], some level of inconvenience to all parties is inevitable since plaintiff (and its principals) are located in Missouri and it is more convenient to litigate in St. Louis; and defendant resides in Texas where it would be more convenient to litigate in Dallas. Thus, the Court finds this factor to be neutral.

Convenience of witnesses is the primary factor in considering a §1404(a) transfer. Biometics, at 876; Graff, at 1121. Considerations relevant to this factor include the number of essential nonparty witnesses, their location, and the preference for live testimony. Graff, at 1121. It is important to remember that it is not a battle of numbers; i.e. which party can list the most essential nonparty witnesses. Rather, the moving party must identify these witnesses and provide the Court with a general statement as to their expected testimony. Graff, at 1121. The Court must examine the materiality of the anticipated witnesses' testimony and determine whether the forum is convenient for them. Id., at 1122.

Defendant has provided the Court with a detailed listing of 32 party and nonparty witnesses. Of these 32 witnesses, approximately 25 are located outside of St. Louis: 20 are located in Texas, 3 are located in Ohio, and 2 are located in Connecticut. Defendant outlines their testimonies as being relevant to not only his employment relationship with plaintiff, but also his business relationship with MRN and/or Clayton Holdings. On the other hand, plaintiff avers that the only witnesses with testimony relevant to this case are the 2 principals of plaintiff and 3 employee-officers of the plaintiff; all of whom are located in St. Louis. Plaintiff avers that their testimonies are relevant to the alleged misrepresentations made by defendant. Plaintiff also lists 6 additional witnesses: 1 located in St. Louis, 2 located in Texas, 2 located in Connecticut, and 1

---

[5]Since the plaintiff is a corporate entity, the "convenience" factor is really applicable to its principals: Scott Scholtz and John Adam.

located in Colorado. These witnesses are expected to testify regarding payments allegedly made to defendant by MRN and/or Clayton Holdings.

After careful consideration, the Court finds that the convenience of the witnesses favors transfer to Texas. At the heart of plaintiff's complaint is its belief that defendant diverted business to himself (from MRN and/or Clayton Holdings) as opposed to plaintiff. The issue of the nature of defendant's business relationship with plaintiff is certainly important but is only one factor involved in the resolution of this claim. The other important factor is defendant's business relationship with MRN and/or Clayton Holdings since defendant contends that this relationship predates his business relationship with DPT, and that DPT was aware of this business relationship during the relevant time-period. The majority of the defendant's witnesses will testify to not only to his business relationship with DPT but also as to MRN and/or Clayton Holdings. Furthermore, the majority of these witnesses are outside the subpoena power of this Court, yet are within the subpoena power of the Texas court or can more easily travel to Dallas to testify. However, the majority of the witnesses listed by the plaintiff will only testify as to defendant's relationship with DPT and are employees of DPT and (and the Court assumes) can easily be prevailed upon to voluntarily appear in Texas to testify. Of the other witnesses listed by the plaintiff, 2 are located in Texas, 1 in St. Louis, and 2 in Connecticut. Thus, only 3 non-party witnesses, not employed by plaintiff, are outside the subpoena power of both this Court and the Texas district court. Finally, relative ease of access to documents is neutral given the abilities of the parties to fax or e-mail documents from anywhere in the country.[6]

---

[6]Plaintiff also contends that venue should remain in Missouri because the computer at issue in Counts III and IV is in possession of the plaintiff in Missouri. Firstly, the Court assumes that plaintiff is no longer alleging (as it has done in it complaint) that defendant has refused to return the subject computer. Secondly, the fact that the computer is itself in Missouri is irrelevant because plaintiff's claims have to do with his conduct regarding its return, not the physical

8

Among the factors this Court may consider in determining whether the interest of justice favors transfer are a plaintiff's choice of forum, the relative ability of the parties to bear the expense of litigating in a distant forum, judicial economy, the obstacles to a fair trial, conflict of law issues, each party's ability to enforce a judgment, and the advantages of having a local court determine issues of local law. Terra Int'l, at 696. Upon review of the record before the Court, the remaining factors weigh in favor of transferring venue of this case.

The plaintiff has chosen Missouri as its forum to litigate this case and under most circumstances, a plaintiff's choice of forum is sacrosanct. However, even plaintiff has conceded that both Texas and Missouri have a substantial connection to the claims asserted by the plaintiff. Neither party has given the Court any financial reasons for choosing one forum over another; however, it appears that both parties are financially solvent and can litigate in either forum. Neither party has asserted that they are unable to bear the financial burden of litigating outside their home forum. Although the claims asserted are Missouri state claims, this Court is secure in the fact that the district court in Texas, sitting in diversity jurisdiction, is as capable as this Court is in interpreting state law other than the forum state law. There is no reason for this Court to believe that plaintiff would not receive a fair trial in Texas. Finally, as to disputes regarding applicable law (either Missouri or Texas), this Court is again secure in its belief that the district court in Texas can resolve such disputes.[7]

---

condition of the computer. There is no claim that the computer itself was damaged in any way by the defendant. Thus, the computer's physical presence in Missouri is irrelevant except insofar as it evidences the fact that defendant did return the computer to plaintiff.

[7]The Court notes that in transfers made pursuant to §1404(a), transferee court applies law of tranferor court. Wisland v. Admiral Bev. Corp., 119 F3d. 733, 736 (8th Cir. 1997).

Based upon its consideration of the relevant factors, the Court concludes that defendant has made a clear showing that the balance of interests weighs in favor of transfer to the United States District Court for the Northern District of Texas, Dallas Division.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss for improper venue (#7) be and is **DENIED.**

**IT IS FURTHER ORDERED** that defendant's motion to transfer venue (#7) be and is **GRANTED.**

**IT IS FINALLY ORDERED** that the Clerk of the Court shall transfer this cause of action, in its entirety, to the United States District Court for the Northern District of Texas, Dallas Division, pursuant to 28 U.S.C. §1404(a).

Dated this   20th   day of December, 2006.

_____
SENIOR UNITED STATES DISTRICT JUDGE